In re Receivership of Marathon Savings Bank.

Buena Vista County et al., Appellees, v. Marathon Savings Bank et al., Appellants.

**BANKS AND BANKING:** Insolvency and Dissolution—Receiver for
1  **State Bank.** The superintendent of banking did not, under Sec.
1877, Code, 1897, have the *exclusive* right to apply for a receiver for
an insolvent state bank. (But now, see 40 G. A., Ch. 189.)

**RECEIVERS:** Claims—Priority of Municipality. A bank deposit in
2  the name of a county, when such deposit represents taxes paid by
property owners, is a ''debt'' due the county, within the meaning
of Sec. 3825-a, Code Supp., 1913, and therefore entitles the county to
a preference in the matter of payment when the bank becomes in-
solvent and passes into the hands of a·receiver, notwithstanding
the provisions of Sec. 1877, Code, 1897, providing that the assets
of an insolvent bank shall be distributed ''ratably * * * among the
creditors thereof, giving preference in payment to depositors.''

**APPEAL AND ERROR:** Presentation in Trial Court—Ownership of
3  **Claim.** The question of ''ownership'' of a claim which is in issue
in the trial court may not be raised for the first time on appeal.

**RECEIVERS:** Distribution· of Assets—Priority in Favor of County.
4  The statute of this state (Sec. 3825-a, Code Supp., 1913) which pro-
vides that, in the distribution of receivership assets, debts due pub-
lic municipalities shall be entitled to preference in payment, is
but declaratory of the common law.

*Appeal from Buena Vista District Court.*—James DeLand,
Judge.

January 10, 1924.

Supplemental Opinion October 17, 1924.

Action to recover on a claim of Buena Vista County, Iowa,
and to establish same as a preferred claim against the receiver
of the Marathon Savings Bank, an insolvent, and to hold the
American Surety Company of New York liable upon its deposi-
tary bond given to secure the county and its treasurer against

deposits in the said bank. The trial court decreed the claim to be preferred in the sum of $22,576.78, as prayed for, and found that the bond of the surety company is a valid, existing obligation; and a conditional judgment was entered against the surety company for any balance not in excess of $12,000, the amount of the bond unpaid by said receiver. The receiver was directed to pay at once to the county the amount decreed, from any funds in his possession as receiver of the bank, as a preferred claim. The Marathon Savings Bank and A. L. Whitney, receiver, appeal.—*Affirmed.*

*Heald, Cook & Heald* and *Kelleher & Mitchell,* for appellants.

*Helsell & Helsell, Bailie & Edson,* and *Stipp, Perry, Bannister & Starzinger,* for appellees.

DE GRAFF, J.—This appeal involves two actions which were consolidated for the purpose of trial and decree, and by stipulation were tried on the same evidence and "as an equity action." The first case noted in the caption was instituted by Buena Vista County, Iowa, and W. C. Skiff, as treasurer of said county, to enforce a claim of $22,576.78 in favor of the county against A. L. Whitney, receiver of the Marathon Savings Bank, an insolvent, and the petition was filed in a receivership proceeding as a petition and claim for preference. In this case the American Surety Company intervened.

The second case noted in the caption was instituted by Buena Vista County, and W. C. Skiff as treasurer, as an action at law, against the American Surety Company, upon its depositary bond in the sum of $12,000, given to secure the county treasurer as to deposits of the county made through him in the Marathon Savings Bank. In this action both the receiver and the bank were made parties defendant.

Preliminary to the disposition of the first point on this appeal, it may be stated that, on the 22d day of April, 1921, W. W. Bennett, cashier of the Marathon Savings Bank, E. B.

1. Banks and
banking: in-
solvency and
dissolution: re-
ceiver for state
bank.
Wells, its president, A. L. Whitney, its attorney, and one or two other persons, prepared and signed a petition in equity for the appointment of a receiver for the bank. This action was entitled, "W. W. Bennett v. The Marathon Savings Bank of Marathon, a corporation." Due and timely notice of the hearing was given, and subsequently A. L. Whitney was duly appointed as receiver, and qualified. Whatever power he has exercised or claimed is by virtue of his appointment in the receivership proceedings, predicated on Chapter 12 of Title XVIII of the Code. No party to this action can now be heard to question his standing as such receiver or the jurisdiction of the court in the appointment of him. Section 1877 of the Code, in force and effect at the time of the appointment of the instant receiver, is a permissive statute, and provides that the auditor of state *may*, with the assent of the attorney-general, apply to the courts for the appointment of a receiver of a bank. It therefore results that the status of acts of the receiver in this case cannot now be impeached.

This being true, the first question to determine is whether the claim of Buena Vista County for tax money deposited with the Marathon Savings Bank is a debt due the county. If the claim of the county constitutes a debt in a legal

2. Receivers:
claims: priority
of municipality.
sense, then the receiver must pay such debt as a preferential claim, by virtue of the statute. Section 3825-a, Code Supplement, 1913. This statute provides the order of claims entitled to priority when the property of any person, company, or corporation is in the hands of a receiver for distribution, and with the exception of taxes or other debts entitled to preference under the laws of the United States, "debts due or taxes assessed and levied for the benefit of the state, county or other municipal corporation in this state" are entitled to priority. This is a salutary statute. It is founded in wise policy, and is a recognition of the fact that the state must endure and the functions of government must not cease. Consideration of what is expedient for the community is of vital concern. It involves the doctrine of social self-defense. It arises from an inarticulate conviction, based on an instinctive

preference.   Every modern civilized society subordinates the individual to society, and at the same time aims to impose the minimum of sacrifice on its citizens.   The statute in question applies to all persons or aggregations of persons, natural or juristic, and finds its foundation in strong sense and stern political morality.   It must find application in the instant case.

Section 1877 of the Code provides for the liquidation of insolvent banks by the distribution of the assets thereof "ratably * * * among the creditors thereof, giving preference in payment to depositors."   This section does not conflict with the terms of Section 3825-a, Code Supplement, 1913.   In the latter statute the legislature contemplated and intended that certain claims should have priority over the claims of depositors and creditors, whether preferred or otherwise among themselves, and in fixing the order of priority, determined that the assets of any corporation in the hands of a receiver for distribution should be subject to the payment of certain claims in a defined order of priority.   Under this statute, debts due the county are entitled to preference over depositors or other creditors.

With this view of the situation, it is immaterial whether or not the claim of the county against the receiver is bottomed on a trust theory.   There is but one primary question: Is a debt owing by the bank, and now owing by its receiver, in a fixed and liquidated amount?   If so, it is entitled to statutory preference.   The amount is not in dispute.   Clearly, the county is the real party in interest.   This is irrevocably established by the pleadings and the proof.   In fact, no such question was raised in the trial court, and the ownership of the claim cannot for the first time be raised on appeal.   The court decreed that the debt was owing to the county, and established its priority.

3. APPEAL AND ERROR: presentation in trial court: ownership of claim.

The decree is *res judicata* as to the substantive rights of all persons interested in the subject-matter.

The undisputed record facts disclose that the moneys received by the appellant bank were received in payment of taxes to Buena Vista County.   The moneys so received consisted of cash and checks delivered to the bank by local taxpayers, who, upon making such payments, were given tax receipts by the

bank, which had received them from the county treasurer for that purpose. The funds so received were placed to the account and credit of the county, which was the owner, and which was entitled to all these sums so paid by the taxpayers. Clearly, the money belonged to the county, and clearly, it constituted a debt owing by the bank to the county. A debt includes every obligation by which one is bound to pay money. *Swanson v. City of Ottumwa,* 118 Iowa 161. No one disputes that the bank owed the debt in its entirety.

We conclude from the existing relations that there existed a right of preference in favor of the county, and the decree entered by the trial court is—*Affirmed.*

PRESTON, STEVENS, and VERMILION, JJ., concur.

### SUPPLEMENTAL OPINION.

DE GRAFF, J.—By reason of the emphasis placed by appellant on certain propositions in the petition for rehearing, and by reason of the public importance of the propositions involved, we feel that further opinion is justified. What was the legislative intent in the enactment of the statute giving preferential claims in favor of "state, county or other municipal corporation in this state?" Section 3825-a, Code Supplement, 1913. The statute is specific and explicit. In *Lewis v. United States,* 92 U. S. 618 (23 L. Ed. 513), it is said:

4. RECEIVERS: distribution of assets: priority in favor of county.

"Where the language of a statute is transparent, and its meaning clear, there is no room for the office of construction. There should be no construction where there is nothing to construe. * * * Affirmative discussion, under such circumstances, is not unlike argument in support of a self-evident truth. The logic may mislead or confuse. It cannot strengthen the preexisting conviction."

We reaffirm that the conceded sum established as a claim against the receiver in favor of Buena Vista County is a debt, within the purview of the statute. The receiver is a mere stakeholder. The county is the real party in interest. No one questions the constitutional right of our legislature to give prefer-

ence to claims as defined by Section 3825-a. In the absence of statute, the right of priority of debts due the state would exist as a prerogative derived from the common law. Our statute is simply declaratory of the common law, which affirms that, when the title of the king conflicts with the title of the subject, the former shall be preferred.

"There is no escape in reason from the conclusion that by adopting the common law Montana adopted the prerogative rule of priority of public debts. That the law may not have been heretofore invoked is not considered important. Many laws, statutory as well as common, are quiescent for years, but are not thereby repealed or abrogated." *American Bonding Co. v. Reynolds,* 203 Fed. 356.

See, also, *United States Fid. & Guar. Co. v. Rainey,* 120 Tenn. 357 (113 S. W. 397); *State v. Madison State Bank* (Mont.), 218 Pac. 652; *Central Bank & Trust Corp. v. State,* 139 Ga. 54 (76 S. E. 587). The numerical weight of authority supports the proposition that the statutory priority of public debts is simply declaratory of the common law. As said in *Marshall v. People of New York,* 254 U. S. 380:

"The priority was not limited to amounts due for taxes, but extended alike to all debts due the state, e. g., to amounts due on a general deposit of state funds in a bank. This priority has been enforced by the courts of New York under a great variety of circumstances. * * * It has been enforced as a right, and not as a rule of administration. This priority arose and exists independently of any statute. The legislature has never, in terms, limited its scope; and the courts have rejected as unsound every contention made that some statute before them had, by implication, effected a repeal or abridgment of the priority. The only changes of the right made by statute have been by way of enlarging its scope in certain cases."

See, also, *Booth v. State,* 131 Ga. 750 (63 S. E. 502); *Orem v. Wrightson,* 51 Md. 34 (34 Am. Rep. 286); *In re Niederstein,* 138 N. Y. Supp. 952; *Booth v. Miller,* 237 Pa. 297 (85 Atl. 457); *State v. Foster,* 29 L. R. A. 226, 228, with note; *United States v. State Bank of North Carolina,* 6 Peters (U. S.) 29 (8 L. Ed. 308).

Our statute, therefore, simply affirms the common-law rule, and the language is general and comprehensive. There is found no limitation, express or implied, in its terms, and no rule of construction would justify this court in fixing a limit to the terms which the legislature has seen fit to adopt. The word ''debt'' must be given its ordinary meaning and the manifest intent of the legislature in enacting the law. It has been the subject of legal definition. *Warner v. Cammack,* 37 Iowa 642; *Stanhope v. Swafford,* 77 Iowa 594; *Jewell v. Nuhn,* 173 Iowa 112. The form of indebtedness is immaterial, and it may be legal or equitable. No discrimination is made by the statute, which has for its object the public good; and therefore the statute is to be liberally construed. *Beaston v. Farmers' Bank of Delaware,* 37 U. S. 102, 134 (9 L. Ed. 1017); *In re Carnegie Trust Co.,* 206 N. Y. 390 (46 L. R. A. [N. S.] 260). Having determined that there is a debt, and that it is due a municipal corporation, we are bound to place it in the class which the legislature has declared shall be entitled to preference. *Lockwood v. Lockwood,* 68 S. C. 328 (47 S. E. 441).

In *In re Western Implement Co.,* 166 Fed. 576, it was held that money due the state for binding twine manufactured by the state in its penitentiary is a debt owing the state, entitled to preference under the statute of Minnesota giving a priority to debts due the state. Under the statute of Massachusetts, a municipal corporation is entitled to preference for debts owing such corporation; and the language of the act is quite similar to the Iowa statute. *Bent v. Inhabitants of Hubbardston,* 138 Mass. 99. See, also, *State v. Bell,* 64 Minn. 400; *American Sur. Co. of New York v. Pearson,* 146 Minn. 342.

It is to be observed that Section 3825-a by its very language applies to *all* corporations; but the proposition is advanced by appellant that the banking act (Code Section 1877) regulates the administration of insolvent banking corporations and the distribution of their assets. In other words, it is contended that the banking act, of which Section 1877 is a part, is a code in itself. We perceive no valid reason for holding that a bank of the character of appellant is not within the general law. If a municipal corporation has lost its right to a prefer-

ence under the instant facts, it must be attributed to careless-
ness in framing the present statute, rather than to deliberate in-
tention. Section 1877 of our Code recites that preference shall
be given to depositors over other creditors, in payment. This
statute is not in conflict with Section 3825-a. Eliminate the
county in the case at bar, and Section 1877 finds application.
The banking act was enacted prior to Section 3825-a. If it may
be said that Section 1877 constituted an implied waiver of the
common-law right of preference when a bank is involved, it must
be held that, in the enactment of Section 3825-a, the implied
waiver, if it existed, was negatived, and the right of preference of
state and agencies of state was specifically recognized and de-
clared. Clearly, the right defined by Section 1877, as urged by
appellant, does not exist in the face of a positive enactment that
the rights of the state and the minor municipal subdivisions of
the state have preference in the distribution of assets of *all* in-
solvent corporations.

The Federal law governing insolvent national banks and
the interpretation thereof by the Supreme Court of the United
States cannot be of aid in the solution of the problem before us.
The National Banking Act constitutes by itself a complete sys-
tem for the establishment and government of national banks.
It is a separate code by itself, neither limited nor enlarged by
other statutory provisions with respect to the settlement of de-
mands against insolvents or their estates. It contains full pro-
visions for security against possible loss for moneys deposited,
and, as said by the Supreme Court of the United States:

"It would seem only equitable that the government should
call for such security, and, if it prove insufficient, take the posi-
tion of other creditors in the distribution of the assets of the
bank in case of its failure. The framers of the banking law
evidently so regarded the matter." *Cook County Nat. Bank
v. United States*, 107 U. S. 445 (27 L. Ed. 537).

The Federal law provides for the distribution of the en-
tire assets of the bank, giving no preference to any claim, ex-
cept for moneys to reimburse the United States for advances in
redeeming the notes. Any sum remaining after the payment of

claims is to be handed over to the stockholders in proportion to their respective shares. The court further said:

"These provisions could not be carried out if the United States were entitled to priority in the payment of a demand not arising from advances to redeem the circulating notes."

It results, then, that the provisions of the National Bank Act withdraw insolvent national banks from the class of insolvent persons, out of whose estates demands of the United States are to be paid in preference to the claims of other creditors. Such a conclusion cannot be drawn from the intent or content of the banking law of Iowa, and consequently, reasoning by analogy gives no support to appellant's contention.

We adhere to the principles announced in our former opinion, and the petition for rehearing is denied.

ARTHUR, C. J., and EVANS, PRESTON, STEVENS, and VERMILION, JJ., concur.

FAVILLE, J., takes no part.